**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 13, 2008

In re Honorable BEVERLEY
NETTLES-NICKERSON, Judge, 30th
Circuit Court.

No. 133929

_____

BEFORE THE ENTIRE BENCH

MEMORANDUM OPINION.

On June 11, 2008, the Court heard oral argument from the parties concerning the Judicial Tenure Commission's findings and recommendations in this matter. The Judicial Tenure Commission's Decision and Recommendation for Order of Discipline is attached as an exhibit to this opinion.

We adopt in part the recommendations made by the Judicial Tenure Commission and order that the respondent is removed from office, effective immediately, on the basis of the following misconduct:

(1)     Respondent twice made false statements under oath in connection with her divorce proceeding (Count I);

(2)     Respondent made and solicited other false statements while not under oath, including the submission of fabricated evidence to the Judicial Tenure Commission (Count II);

(3)     Respondent improperly listed cases on the no-progress docket (Count III);

(4)     Respondent was absent excessively and engaged in belated commencement of proceedings, untimely adjournments, and improper docket management (Count IV);

(5)     Respondent allowed a social relationship to influence the release of a criminal defendant from probation (Count VI); and

(6)     Respondent recklessly flaunted her judicial office (Count IX).

See page 2 of the Judicial Tenure Commission's Decision and Recommendation for Order of Discipline in the attached exhibit.

The respondent is no longer a judicial officer and will not be an incumbent at the time of the 2008 30th Circuit Court election.  We decline the Judicial Tenure Commission's additional recommendation to conditionally suspend the respondent.

On the basis of Counts I and II, costs are imposed on the respondent judge in the amount of $12,000.  MCR 9.205(B).

This judgment is effective immediately.

Clifford W. Taylor
Michael F. Cavanagh
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

2

STATE OF MICHIGAN

SUPREME COURT

In re Honorable BEVERLEY
NETTLES-NICKERSON, Judge, 30th
Circuit Court.                                          No. 133929

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the majority's decision and reasons for removing respondent Judge Beverley Nettles-Nickerson from her current position as judge of the 30th Circuit Court.

I dissent from the majority's decision to assess against the respondent any costs of the Judicial Tenure Commission proceeding. As I stated previously in regard to the proposed assessment of costs against a respondent judge:

> [T]here is no constitutional authority to assess costs against a judge. Subsection 2 of Const 1963, art 6, § 30 provides that "the supreme court may censure, suspend with or without salary, retire or remove a judge . . . ." As I stated in my concurrence in *In re Noecker,* 472 Mich 1, 18-19 (2005), "Nothing in this constitutional provision gives this Court any authority to discipline the judge by assessing the judge the costs of the Judicial Tenure Commission proceedings against him or her." [*In re Trudel,* 477 Mich 1202, 1203 (2006) (Weaver, J., concurring).]

Further, as I stated in a subsequent order by a majority of this Court granting a default judgment against Judge Trudel:

> While under Const 1963, art 6, § 30(2) the Supreme Court also has the authority to "make rules implementing this section [concerning the Judicial Tenure Commission]," the Supreme Court *cannot* create Judicial Tenure Commission rules that authorize the

Judicial Tenure Commission to recommend to the Supreme Court something that the Supreme Court does not have constitutional authority to do. The rule-making authority available to the Supreme Court is limited to making rules "implementing this section." And, because "this section" provides that "the supreme court may censure, suspend with or without salary, retire or remove a judge," this Court only has the authority to make rules implementing the section in connection with the *censure, suspension with or without salary, or retirement or removal of a judge.* Assessment and collection of costs is not included in this authority to discipline a judge. As the Supreme Court does not have authority to assess and collect costs granted to it by the Michigan Constitution, there is no corresponding rule-making authority to provide for the Judicial Tenure Commission to recommend to the Supreme Court the assessment and collection of costs against a respondent judge. This Court may not delegate authority that it lacks in the first place. [*In re Trudel,* 480 Mich 1213, 1214 (2007) (Weaver, J., dissenting).]

Thus, the majority's use of its unconstitutional, law-creating court rule authorizing the assessment of costs against disciplined judges is an unrestrained interpretation of Const 1963, art 6, § 30. The majority of this Court should exercise judicial restraint in its interpretation of Const 1963, art 6, § 30 and leave it to the people of Michigan to decide, by constitutional amendment, if they want costs assessed against disciplined judges.

Additionally, given the vast power vested in the executive director and the general counsel of the Judicial Tenure Commission, and given the possibility of due process violations against a respondent judge, it is becoming apparent that the rules concerning the operation of the Judicial Tenure Commission, created by this Court pursuant to Const 1963, art 6, § 30, should be reexamined by this Court and the people.

Elizabeth A. Weaver

2

EXHIBIT

# STATE OF MICHIGAN
## BEFORE THE JUDICIAL TENURE COMMISSION

**COMPLAINT AGAINST:**

**HON. BEVERLY NETTLES-NICKERSON**

**Judge, 30th Circuit Court**
**Veteran Memorial Courthouse**
**313 Kalamazoo St.**
**PO Box 40771**
**Lansing, MI 48901**

**Formal Complaint No. 81**

_____ /

## DECISION AND RECOMMENDATION
## FOR ORDER OF DISCIPLINE

At a session of the Michigan Judicial
Tenure Commission held on April Ͽⳙ,
2008, in the City of Detroit

PRESENT:

Hon. Barry M. Grant, Chairperson
Hon. Kathleen J. McCann, Vice Chairperson
Thomas J. Ryan, Esq., Secretary
Hon. Jeanne Stempien
Hon. Michael J. Talbot
Nancy J. Diehl, Esq.
Ronald F. Rose
Hon. Nanci J. Grant
Marja M. Winters

## I. Introduction

The Judicial Tenure Commission of the State of Michigan ("Commission")

files this recommendation for discipline against Hon. Beverly Nettles-Nickerson

- 1 -

("Respondent"), who at all material times was a judge of the 30th Circuit Court for the County of Ingham, State of Michigan. This action is taken pursuant to the authority of the Commission under Article 6, § 30 of the Michigan Constitution of 1963, as amended, and MCR 9.203.

On February 12, 2008, the Commission received findings of fact and conclusions of law from the Master appointed by the Supreme Court to hear evidence in this matter. Having reviewed the transcript of the hearing, the report, the exhibits, and having considered the oral arguments of counsel, with two exceptions the Commission adopts the findings of facts set forth in the Master's report. The Commission concludes, as did the Master, that Respondent twice made false statements under oath in connection with her divorce proceeding (Count I), that Respondent made and solicited other false statements while not under oath including the submission of fabricated evidence to the Commission (Count II), that Respondent improperly listed cases on the no progress docket (Count III), that Respondent engaged in excessive absences, belated commencement of proceedings, untimely adjournments and improper docket management (Count IV), that Respondent allowed a social relationship to influence the release of a criminal defendant from probation (Count VI), and that Respondent recklessly flaunted her judicial office (Count IX).

With respect to Count X, alleging that Respondent knowingly made unfounded accusations of racism, the Commission adopts the Master's factual findings regarding the nature of the statements made by Respondent and the actions taken by Respondent, but concludes that the evidence presented does not support a determination that Respondent lacked a good faith belief in the truth of her assertions regarding race and racism.

The Commission agrees with and adopts the Master's conclusions that the Examiner failed to establish misconduct with respect to the allegations in Counts V, VII, and VIII.

Accordingly, the Commission recommends that the Supreme Court remove Respondent from the office of judge of the 30th Circuit Court and conditionally suspend her, without pay, for a period of six years commencing on January 1, 2009. Additionally, the Commission recommends that the Supreme Court order Respondent to pay costs, fees, and expenses in the amount of $128,861.26 pursuant to MCR 9.205(B) based on its finding that Respondent engaged in intentional misrepresentation and submitted fabricated evidence to the Commission.

## II. Procedural Background

On May 16, 2007 the Commission filed Formal Complaint No. 81 asserting ten counts against Respondent. Count I alleged that Respondent made a fraudulent claim of residency to obtain a divorce. Count II alleged that Respondent made

- 3 -

false statements, solicited false statements by others, and/or fabricated evidence. Count III alleged that Respondent coerced court employees into listing cases on the no progress docket. Count IV alleged that Respondent was responsible for excessive absences, belated commencement of proceedings, untimely adjournments and improper docket management. Count V alleged that Respondent engaged in improper *ex parte* communications. Count VI alleged that Respondent allowed social or other relationships influence the release of a criminal defendant from probation. Count VII alleged that Respondent attempted to retaliate against the probation department and certain employees as a result of the incident described in Count VI. Count VIII alleged that Respondent improperly terminated her judicial assistant and covered up the reasons for the dismissal. Count IX alleged that Respondent engaged in judicial misconduct associated with a dispute between herself and the owner of a gasoline filling station. Finally, Count X alleged that Respondent made unsubstantiated claims of racism.

The Respondent filed an Answer and Affirmative Defenses on May 31, 2007. On June 6, 2007, the Supreme Court suspended Respondent with pay until further order of the Court. On June 13, 2007 the Supreme Court appointed the Honorable Leopold Borrello as Master to take proofs regarding the allegations contained in Formal Complaint No. 81. The hearing before the Master commenced on September 18, 2007, and continued over twenty-four days. On

-4-

February 12, 2008, the Master issued a thirty-five page report in which he found that seven of the ten counts alleged in the Formal Complaint (Counts I-IV, VI, IX, and X) were established by a preponderance of the evidence. The Master found no misconduct on Counts V, VII, and VIII.

On February 12, 2008, Respondent filed a motion and brief in support of a request to reopen the proofs based upon newly discovered evidence. The Examiner filed an answer and brief on February 13, 2008. On February 18, 2008, the Master signed an opinion and order denying Respondent's motion to reopen the proofs.

On February 29, 2008, Respondent filed written objections to the Master's report and a brief in support of the objections. On March 6, 2008, the Examiner filed a petition to adopt the report of the Master and to modify an evidentiary ruling made by the Master during the course of the hearing. The Commission heard oral argument on Respondent's objections on March 10, 2008.

### III. Standard Of Proof

The standard of proof applicable in judicial disciplinary matters is the preponderance of the evidence standard. *In re Ferrara*, 458 Mich 350, 360; 582 NW2d 817 (1998). The Examiner bears the burden of proving set forth in the Complaint. MCR 9.211(A). The Commission reviews the Master's findings de novo. *In re Chrzanowski*, 465 Mich 468, 480-481; 636 NW2d 758 (2001).

Although the Commission is not required to accept to the Master's findings of fact, it may appropriately recognize and defer to the Master's superior ability to observe the witnesses' demeanor and comment on their credibility. Cf. *In re Lloyd*, 424 Mich 514, 535; 384 NW2d 9 (1986).

## IV. Findings Of Fact

As noted, the Commission adopts and incorporates by reference the Master's findings of fact for Counts I through IX in their entirety, with two exceptions.

First, with respect to Count VI, we find that the note on Exhibit 9f stated "Gwen prepared discharge" and not "Gwen, prepare discharge," as the Master's report states. This change does not alter our other findings of fact or our conclusions of law as to Count VI.

Second, with respect to Count X, the Commission adopts that Master's findings of fact pertaining to Respondent's statements and actions, but we conclude that the evidence does not support a determination that Respondent lacked an honest belief that she had been treated differently, at least in some respects, based on her race. No evidence in the record supports a conclusion that Respondent was, in fact, discriminated against on the basis of her race. But the absence of such evidence does not necessarily establish that Respondent intentionally made false allegations about race and racism while knowing them to be false. Because the burden of proof lies with the Examiner, Respondent is not

- 6 -

obligated to establish the specific factual basis substantiating her accusations. We cannot say, based on the record before us, that Respondent necessarily lacked a basis for believing that her accusations were true. Therefore, we cannot find that Respondent *knowingly* made false accusations of race discrimination.

## V. Conclusions Of Law

A.    <u>The Legal Basis for the Imposition of Discipline</u>

With respect to Counts I-IV, VI, and IX of the Formal Complaint, the Commission adopts and incorporates the conclusions of law set forth in the Master's report. The facts asserted in the Formal Complaint and established at the public hearing in this matter show, by a preponderance of the evidence, that Respondent breached the standards of judicial conduct and is responsible for all of the following:

- Perjury contrary to MCL 750. 422 (as to Count I only);

- Misconduct in office as defined by the Michigan Constitution of 1963, as amended Article VI, § 30 and MCR 9.205 (as to Counts I, II, III, IV, VI, and IX);

- Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Article VI, § 30 and MCR 9.205 (as to Counts I, II, III, IV, VI, and IX);

- Failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Michigan Code of Judicial Conduct (MCJC), Canon 1 (as to Counts I, II, III, and IV);

-7-

- Failure to bear in mind that the judicial system is for the benefit of the litigant and the public, not the judiciary, contrary to MCJC, Canon 1 (as to Counts III, and IV);

- Conduct involving impropriety and the appearance of impropriety, which erodes public confidence in the judiciary, in violation of MCJC, Cannon 2A (as to Counts I, II, III, IV, and IX);

- Failure to respect and observe the law and so conduct herself at all times in a manner which would enhance the public's confidence in the integrity and impartiality of the judiciary contrary to MCJC, Canon 2B (as to Counts I, II, and III);

- Allowing family, social or other relationships to influence judicial conduct or judgment, in violation of MCJC, Canon 2C (as to Counts IV and VI);

- Using the prestige of office to advance personal business interest contrary to MCJC, Canon 2C (as to Count IX only);

- Failure to be faithful to the law and to maintain professional competence in it, contrary to MCJC, Canon 3A(1) (as to Count III only);

- Lack of personal responsibility for her own behavior and for the proper conduct in the administration of justice which she presides contrary to MCR 9.205(A) (as to Counts II, III, and IV);

- Conduct prejudicial to the proper administration of justice, in violation of MCR 9.104(A)(1) (as to Counts I, II, III, IV, VI, and IX);

- Conduct that exposes the legal profession or courts to obloquy, contempt, censure or reproach, contrary to MCR 9.104(A)(2) (as to Counts I, II, III, IV, VI, and IX);

- Conduct contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(A)(3) (as to Counts I, II, III, IV, VI, and IX);

- Conduct that violates the standard or rules of professional responsibility adopted by the Supreme Court, contrary to MCR 9.104(A)(4) (as to Counts I, II, III, IV, VI, and IX); and

- Failure to cooperate with a reasonable request for assistance by the Commission, contrary to MCR 9.208(B) (as to Count II only).

B.    The Master's Rulings On Evidentiary Issues

With one exception, the Commission agrees with and adopts the conclusions of law reached by the Master on all of the various evidentiary disputes raised by the parties.

The one exception is our conclusion regarding the Master's decision to strike portions of Counts IV (a portion of ¶ 41) and X (¶¶ 105-106) of the Formal Complaint based on the doctrine of laches. See Transcript, Vol. 8, pp 1361-1379. The act of striking portions of the Formal Complaint on the basis of laches is, in effect, the granting of a dispositive motion. In a judicial discipline matter, the master lacks the authority to grant dispositive motions, but instead may only make recommendations to the Commission. Therefore, the Master should not have stricken any portion of the Formal Complaint. The Examiner has indicated that he does not wish to re-open the proofs on these matters. Accordingly, we address the issue solely for purposes of clarification.

# VI. Disciplinary Analysis

## A.    The *Brown* Factors

The Michigan Supreme Court set forth the criteria for assessing proposed sanctions in *In re Brown*, 461 Mich 1291, 1292-1293; 625 NW2d 744 (1999). A discussion of the relevant factors follows.

### (1)    *Misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct.*

Respondent's conduct was part of a pervasive pattern of numerous breaches of the canons and appropriate ethical conduct and included conduct violative of criminal law. Accordingly, it is much more serious than an isolated instance of misconduct. This factor weighs heavily in favor of the imposition of a more severe sanction.

### (2)    *Misconduct on the bench is usually more serious than the same misconduct off the bench.*

Many aspects of Respondent's misconduct involved bench activities, including the early termination of probation as a favor for a friend, coercing court employees into improperly listing cases on the No Progress docket, and making and soliciting false statements involving matters at the court. This factor weighs in favor of the imposition of a more severe sanction.

**(3)** *Misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety.*

Respondent's perjury (Count I) was prejudicial to the actual administration of justice in her divorce case because it caused the case to be brought and decided in the wrong venue. Respondent's presentation of fabricated evidence to the Commission (Count II) was prejudicial to the actual administration of justice because it brought potentially deceptive evidence before the Master and the Commission. Respondent's coercion of court employees to improperly place cases on the No Progress docket (Count III) was prejudicial to the actual administration of justice because it caused cases to be listed on the No Progress docket that should not have been listed on the No Progress docket. At least one case was dismissed when it should not have been. Respondent's allowing a social relationship to influence the release of a criminal defendant from probation (Count VI) was prejudicial to the actual administration of justice because it caused a criminal defendant to be released from probation when he otherwise would not have been so released. These acts of misconduct reflect a lack of respect for justice and the courts. Accordingly, this factor weighs heavily in favor of the imposition of a more severe sanction.

**(4) *Misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does.***

Respondent's actions involved misconduct that implicated the actual administration of justice and created an appearance of impropriety, as well as less specific misconduct. This factor would weigh in favor of a more severe sanction if we had not already concluded, in our analysis of factor (3), that Respondent's actions actually prejudiced the actual administration of justice. Under the circumstances of this case, this factor is duplicative.

**(5) *Misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated.***

Respondent's perjury, the most serious act of misconduct, was premeditated and deliberate. The evidence showed that Respondent had expressed a desire to keep her divorce out of the 30th Circuit Court. Respondent's act of perjury accomplished this goal. This factor weighs heavily in favor of the imposition of a more severe sanction.

**(6) *Misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery.***

Respondent's act of perjury in her divorce case undermined the ability of the justice system to discover the truth of her ex-husband's residency, which if known at the time of Respondent's misrepresentations would have prompted the Kent County Circuit Court to conclude that it lacked jurisdiction over the proceeding.

- 12 -

See MCL 552.9. This factor weighs heavily in favor of the imposition of a more severe sanction.

> **(7)** ***Misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.***

The evidence does not show that Respondent's actions caused the unequal application of justice on the basis of a class of citizenship. Accordingly, this factor, alone, does not weigh in favor of a more severe sanction.

In sum, our consideration of the totality of all seven *Brown* factors weighs heavily in support of the imposition of a more severe sanction.

## B. The Basis for the Level of Discipline and Proportionality

In determining an appropriate sanction in this matter, the Commission is mindful of the Michigan Supreme Court's call for "proportionality" based on comparable conduct. Based on the facts, the Commission believes that removal from office plus an additional conditional suspension of six years, without pay, is an appropriate and proportional sanction for Respondent's misconduct.

A primary function of the judiciary is to discover the truth. Perjury directly undermines this function and, as such, is an affront to the entire process.

> Our judicial system has long recognized the sanctity and importance of the oath. An oath is a significant act, establishing that the oath taker promises to be truthful. As the "focal point of the administration

- 13 -

of justice," a judge is entrusted by the public and has the responsibility to seek truth and justice by evaluating the testimony given under oath. When a judge lies under oath, he or she has failed to internalize one of the central standards of justice and becomes unfit to sit in judgment of others.

*In re Noecker*, 472 Mich 1, 17; 691 NW2d 440 (2005) (Young, J., concurring) (footnotes omitted), quoting *In re Callanan*, 419 Mich 376, 386; 355 NW2d 69 (1984). Apart from the other acts of judicial misconduct, Respondent's deliberate decision to lie under oath itself renders Respondent unfit to sit as a judge.

The Supreme Court has removed judges who have lied. The Court removed Judge Andrea J. Ferrara from office in large part because she twice attempted to submit evidence to the Commission under false pretenses. *In re Ferrara*, 458 Mich 350, 365-369; 582 NW2d 817 (1998). In accepting the Commission's recommendation for removal, the Supreme Court opined that "deception of this sort is 'antithetical to the role of a judge who is sworn to uphold the law and seek the truth.'" *Ferrara, supra*, at 369, quoting *In re Collazo*, 91 NY2d 251, 255; 691 NE2d 1021, 688 NYS2d 997 (1998), quoting *Matter of Myers*, 67 NY2d 550, 554; 496 NE2d 207; 505 NYS2d 48 (1986).

Likewise, the Court removed Judge James P. Noecker because he attempted to deceive the police and the Commission in order to cover up the fact that he had been driving under the influence of alcohol. *In re Noecker, supra.*

- 14 -

The severity of Respondent's pattern of misconduct in this case is at least on par with the severity of the conduct ascribed to Judge Ferrara and Judge Noecker, both of whom engaged in misbehavior comparable to Respondent's misconduct. Accordingly, the Commission concludes that removal from office plus a conditional suspension without pay is an appropriate and proportional level of discipline. Respondent is unfit for judicial office.

In addition to removal from office, the Commission recommends (on the Examiner's request) that Respondent conditionally be suspended for a period of six-years, without pay. Respondent's term in office will be over at the end of 2008 and Respondent has chosen to seek re-election on the November 2008 ballot. This creates a unique set of circumstances for the Commission and the Supreme Court. If Respondent is removed from office only months before the election, and then is re-elected, the sanction of removal from office will be rendered virtually meaningless in the public's eye. Worse yet, a person not fit for judicial office will once again hold that position immediately after being terminated. Accordingly, the Commission recommends that Respondent be conditionally suspended, without pay, for an additional period of six years, commencing on January 1, 2009. This suspension would be conditional, only to become effective in the event that Petitioner is re-elected. It is clear that the Court has authority to impose such a conditional suspension in appropriate circumstances. See *In re Probert*, 411 Mich

210, 237; 308 NW2d 773 (1981); *In re Del Rio*, 400 Mich 665, 726; 256 NW2d 727 (1977).

## VIII. Assessment of Costs, Fees, and Expenses

The Commission finds that Respondent engaged in deceit and intentional misrepresentation. Specifically, Respondent committed perjury and presented a fabricated piece of evidence to the Commission. Accordingly, the Commission requests that Respondent be ordered to pay the costs, fees, and expenses incurred by the Commission in prosecuting the complaint. See MCR 9.205(B). The Examiner has submitted a bill showing costs, fees, and expenses incurred by the Commission in the amount of $128,861.26. Therefore, the Commission requests an assessment of costs, fees, and expenses in the total amount of $128,861.26.

## IX. Conclusion and Recommendation

The Commission concludes that Respondent committed judicial misconduct. Based on the nature and pervasiveness of the misconduct, the Commission recommends that Respondent be removed from office, that Respondent be suspended without pay, conditionally, for a period of six years commencing on January 1, 2009, and that Respondent be ordered to pay an assessment of costs, fees, and expenses in the total amount of $128,861.26.

- 16 -

## JUDICIAL TENURE COMMISSION

HON. BARRY M. GRANT
Chairperson

THOMAS J. RYAN, ESQ.
Secretary

HON. MICHAEL J. TALBOT

NANCY J. DIEHL, ESQ.

RONALD F. ROSE

HON. NANCI J. GRANT

STATE OF MICHIGAN
BEFORE THE JUDICIAL TENURE COMMISSION

**COMPLAINT AGAINST:**

**HON. BEVERLY NETTLES-NICKERSON**

**Judge, 30th Circuit Court**
**Veteran Memorial Courthouse**
**313 Kalamazoo St.**
**PO Box 40771**
**Lansing, MI 48901**

**Formal Complaint No. 81**

_____/

## CONCURRING AND DISSENTING OPINION

We concur in the Commission's findings of fact and conclusions of law but dissent from the recommendation that Respondent be subject to a conditional suspension after removal from office. Removal from judicial office, is the most serious sanction that the Commission can recommend under Const 1963, art 6, § 30. Considering the Respondent's misconduct, removal from judicial office—without more—is appropriate.

When the Commission finds misconduct, its task is to make a recommendation of action to the Supreme Court that is reasonably equivalent to the action that has been taken previously in equivalent cases. MCR 9.220(B)(2). On no prior occasion has the Supreme Court imposed additional discipline over and above removal from office, including a case involving *quid pro quo* bribery.

- 1 -

In our view, imposing a sanction greater than the single most serious sanction available (removal) would be disproportionately severe and punitive.

The Commission must be sensitive to the constitutional rights of the voters of Ingham County. When the Commission has asked our Supreme Court to permanently enjoin a person from again serving in judicial office the Supreme Court has refused to do so, deciding instead to leave the question to the voters. The Court's decision in *In re Callahan*, 419 Mich 376, 388-389; 355 NW2d 59 (1984), is instructive:

> Because in this case we choose, by way of removal under art 6, § 30, to completely terminate all of the respondent's ties to his office, we think it would be speculative to consider at this time our authority to permanently enjoin respondent's ability to serve in an unspecified judicial office at an unspecified time. Furthermore, in view of the egregiousness of the offense of which respondent was convicted, the public attention to it, and the sanctions meted out by the sentencing judge and this Court, we are not so cynical about the electoral or appointive process that we are concerned about the respondent's re-entry upon the judicial scene.

In our view, the same considerations apply to the present case. Rather than recommending a conditional suspension in addition to removal, we would leave Respondent's fate to the voters of Ingham County. Such a recommendation would sensitive to the voters' constitutional right to franchise under Const 1963, art 2, § 1. Accordingly, we would recommend that Respondent be removed from judicial office with the imposition of costs.

HON. KATHLEEN McCANN
Vice-Chairperson

HON. JEANNE STEMPIEN

STATE OF MICHIGAN
BEFORE THE JUDICIAL TENURE COMMISSION

COMPLAINT AGAINST:

HON. BEVERLY NETTLES-NICKERSON

Judge, 30th Circuit Court                    Formal Complaint No. 81
Veteran Memorial Courthouse
313 Kalamazoo St.
PO Box 40771
Lansing, MI 48901
_____/

## CONCURRING AND DISSENTING OPINION

I concur in the Commission's findings of fact and conclusions of law as to Counts

I, II, and III. I find that the Examiner failed to prove the remaining counts by a

preponderance of the evidence. Based on the Commission's findings as to Counts

I, II, and III, I believe that removal from judicial office, plus the imposition of

costs, is appropriate discipline. I also agree with the view of the Concurring and

Dissenting opinion of Judge McCann and Judge Stempien that a conditional

suspension in addition to removal from office is not warranted.


_____
Marja M. Winters

- 1 -