YOUNG, J.
(dissenting). I join in parts V(A) and (C) of Justice MARKMAN’s opinion. Like Justice MARKMAN and the Judicial Tenure Commission (JTC), I conclude that respondent lied during the JTC proceedings and that this misconduct alone provides sufficient basis for removing him from office.[1] I write separately because I decline to address whether the JTC has the authority to determine if respondent vacated his office in violation of Const 1963, art 6, § 20 during the course of judicial disciplinary proceedings because respondent admitted that he changed his primary residence from the first to the second election division from August 2005 to February 2008. Given respondent’s admission that he *711 moved outside his election division,[2] I believe that a formal determination of the JTC’s power to decide such a question independent of respondent’s admission is unnecessary in this case and do not reach a conclusion in the question debated by Justices MARKMAN and WEAVER in their respective opinions.
A. RESPONDENT LIED UNDER OATH
I fully agree with Justice MARKMAN’s analysis of the record in parts V(A) and (C) regarding respondent’s untruthful testimony. What is startling is that the majority accepts without question respondent’s proffered justification for vacating his office — that respondent “thought he could live in [the second election] division as long as he was not running for reelection.”[3] Were this justification true, one would have expected respondent to live openly and notoriously at his legal residence, wherever that residence happened to he located within the 63rd District. However, review of the record reveals quite the opposite — respondent’s actions during the relevant period were completely inconsistent with one who honestly believed that he could freely live outside his election territory.
Respondent acknowledged that he moved his legal *712 residence out of the 1st election division in 2005. Significantly, respondent acknowledged that he knew that he was required by law to change his address after he moved. However, respondent never changed the address on his driver’s license to reflect his move to the second election division.[4] Additionally, despite acknowledging that he was legally required to do so, respondent never changed his voter registration information from the first to the second election division. In fact, respondent fraudulently continued to vote as though he still lived in the 1st election division.[5]
Moreover, respondent continued to list his 1st election division address as his “residential address” on his 2007 application to carry a concealed weapon (CCW).[6] This latter act is particularly egregious because the CCW application is an affidavit that states:
Read the following statements and, if you agree, sign below at the time of submission with the clerk.
*713 I understand that this application is executed under oath and swear or affirm under penalty of law that the above answers are true and correct to the best of my knowledge. I understand that intentionally making a false statement is a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2500, or both.
Consequently, by signing this application with the incorrect address of residence, respondent again lied under oath. Despite this, respondent’s defense is that he did not read the application before signing it. This has never been a valid defense to false swearing on a document requiring an attestation of truthfulness.[7] The majority’s acceptance of respondent’s excuse is as shameful as respondent’s attempt to minimize the consequence of his dishonesty. We judges demand more of ordinary citizens who appear before us in court. Thus, it is hard to understand the “free pass” the majority has given a fellow member of the judiciary who ought to be held to at least the standard of honesty we require of others.
Respondent’s intentional violation of the laws governing voting, driver’s licenses, and CCW licensing are independently troubling, not inadvertent, and form a pattern of intentional misdirection. If respondent truly believed that he was free to live in the second election division, then why would he take such great pains to make it appear as though his legal residence was still in the 1st election division? I think the answer is clear. *714 Respondent took pains to conceal his true residence because he had reason to know that he was not living in the proper election division. After respondent filed a homestead exemption for his second election division home in 2005, it became increasingly impossible for respondent to maintain the lie regarding his legal residence being outside his election division.
Additionally, the testimony indicated that between 2000 and the end of 2004 respondent provided court staff with a telephone number to his property in the second election division for the court’s after-hours duty log.[8] However, beginning in January 2005, respondent provided a telephone number to his property in the 1st election division, but the testimony indicated that calls placed to this number were forwarded to his address in the second election division. Beginning in January 2006, testimony indicated that the after-hours telephone number was changed to a telephone number in the second election division because respondent “was having problems with his fax machine and he thought that the call forwarding from the other phone was the problem with the fax machine.” However, in July 2006, respondent again reverted to providing court staff with a 1st election division telephone number that was again forwarded to his telephone in the 2nd election division. While the testimony indicated that respondent provided the telephone numbers to the court administrator, at the hearing respondent claimed that the telephone numbers “didn’t come from [him]” and claimed to be unable to recognize his own telephone number, despite the fact that the telephone number was provided to the court administrator a mere eighteen months before the *715 hearing.[9] When asked if he had ever had calls forwarded from one address to another, respondent evasively answered “no, not that I know of.” I reject the ridiculous notion that respondent could not recognize his own telephone number and did not “know” whether he had forwarded telephone calls from one property to the other. More fundamentally, if respondent truly believed that he was free to live legally in the second election division and maintain his judicial office, there would have been no need to forward his telephone calls at all. Thus, I completely agree with Justice Markman that the record establishes that respondent repeatedly lied under oath. The majority incredulously claims that “respondent did nothing to hide the fact” that respondent resided in his second election division home from 2005; however, the plain facts contained in the record indicate otherwise.[10]
*716 b. SANCTION
Having determined that the record fully supports that respondent lied under oath, I believe that the only appropriate sanction is removal from office.[11] As I noted in In re Noecker:[12]
The purpose of Judicial Tenure Commission proceedings is not the punishment of the judge, but to maintain the integrity of the judicial process and to protect the citizenry from corruption and abuse. As such, this Court’s primary concern in determining the appropriate sanction is to restore and maintain the dignity and impartiality of the judiciary and to protect the public.
Our judicial system has long recognized the sanctity and importance of the oath. An oath is a significant act, establishing that the oath taker promises to be truthful. As *717 the “focal point of the administration of justice,” a judge is entrusted by the public and has the responsibility to seek truth and justice by evaluating the testimony given under oath. When a judge lies under oath, he or she has failed to internalize one of the central standards of justice and becomes unfit to sit in judgment of others. .. . [S]ome misconduct, such as lying under oath, goes to the very core of judicial duty and demonstrates the lack of character of such a person to be entrusted with judicial privilege [13]
For these reasons, I would adopt the recommendation of the JTC and remove respondent from office.

 I am aware of the behavior exhibited by the executive director of the Judicial Tenure Commission in January 2008. However, the propriety of his actions is best addressed by the Attorney Grievance Commission, and is not before the Court today. Rather, the sole issue before the Court is whether respondent’s actions constitute judicial misconduct.

 I believe that respondent’s admission establishes that he violated Const 1963, art 6, § 20. Because the law forbids abandonment of office while the office holder continues to function in that office, it is sanction-able judicial misconduct for any judge to continue serving in an office that he has vacated. However, in light of my conclusion that respondent lied under oath, and that this misconduct alone warrants his removal, I do not believe it necessary to address the appropriate sanction for either the abandonment of office violation or the sexually inappropriate misconduct that the JTC also concluded respondent committed.

 Ante at 653. However, respondent asserted in his brief yet a different justification in his brief, claiming that he was “only required to live within the district in which the court sits” and could “make his principal residence in any division within that district." (Emphasis in original.)

 The law requires a person to “immediately notify the secretary of state of his or her new residence address,” and the failure to do so is punishable by a civil infraction. MCL 257.315(1) and (3) (emphasis added).

 Voting in a district other than that associated with one’s place of residence is prohibited by law. MCL 168.932a(d). Nevertheless, respondent claimed that he was entitled to vote in a district where he did not reside because he owned a house in the first election division and “paid the taxes.” However, as our constitution provides, and any voting citizen in this state well knows, an elector is qualified by meeting the “requirements of local residence,” not simply by paying taxes. Const 1963, art 2, § 1. Moreover, “residence” is defined at MCL 168.11 as the “place at which a person habitually sleeps, keeps his or her personal effects and has a regular place of lodging. ” At the time respondent fraudulently voted in the first election division, respondent testified that his property in the first election division was occupied and leased to a “guy who wants to buy it.” I find that respondent’s continued voting in his former electoral district after admitting that he had changed his legal residence entirely undermines his credibility and defense.

 In addition to being a falsehood, this act is prohibited by law. MCL 28.425b(3).

 In fact, the “I didn’t read it” defense is not a cognizable defense for any written document in Michigan, much less a document requiring an attestation of truthfulness. See Otto Baedeker & Associates, Inc v Hamtramck State Bank, 257 Mich 435; 241 NW 249 (1932); Int’l Transportation Ass’n v Bylenga, 254 Mich 236; 236 NW 771 (1931); Collier v Stebbins, 236 Mich 147; 210 NW 264 (1926); Gardner v Johnson, 236 Mich 258, 210 NW 295 (1926).

 The logs, prepared in three-month intervals, provided law enforcement a means of contacting a member of the 63rd District judiciary after regular business hours.

 Because of his need to maintain the deception about the place of his legal residence, even small things became problematic for respondent to admit. He was extraordinarily evasive in his testimony before the JTC. I offer the following example of respondent’s evasive testimony:
Q: So it’s July, August, September 2006.
A: Right.
Q: With a phone number that’s listed there that ends in a 30 that you’ve read. Do you recognize that phone number as one of your home phone numbers?
A: No.
Q: You don’t know what that phone number is?
A: I don’t — I mean I’m not saying it isn’t, but I — and I don’t know how it got there, because I didn’t give it to anybody.

 The majority cites as conclusive evidence the fact that respondent was listed in the local telephone book as proving he “did nothing to hide the fact” that he resided in the second election division. However, a listing in the telephone book merely indicates that respondent had an *716 address and telephone number in the second election division. A listing in the telephone book does not indicate one’s legal residence. One’s voter registration and driver’s license are indicative of legal residence and, as stated, these indicia do not support respondent’s or the majority’s position. Let us not forget that respondent affirmatively attested to the incorrect residence address on his 2007 CCW license application.

 This Court has generally removed a judge from office when it has been determined, in whole or in part, that a judge has provided false testimony or evidence in JTC proceedings. See In re Ryman, 394 Mich 637, 232 NW2d 178 (1975); In re Loyd, 424 Mich 514; 384 NW2d 9 (1986); In re Ferrara, 458 Mich 350, 372; 582 NW2d 817 (1998) (“Judges, occupying the watchtower of our system of justice, should preserve, if not uplift, the standard of truth, not trample it underfoot or hide in its shady recesses. This is precisely why judges should be exemplars of respectful, forthright, and appropriate conduct.”); In re Noecker, 472 Mich 1; 691 NW2d 440 (2005); In re Nettles-Nickerson, 481 Mich 321; 750 NW2d 560 (2008). The only exception I can discern is In re Thompson, 470 Mich 1347 (2004), where the JTC and respondent reached a plea agreement for a 90-day suspension, and the complaint included an allegation that respondent “demonstrated a lack of candor” before the JTC.

 472 Mich 1, 691 NW2d 440 (2005).

 Id. at 16-17 (emphasis added).